**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (CINCINNATI)**

| | | |
|---|---|---|
| TERRANCE L. FEASTER, | : | Case No. 1:25-cv-580 |
| | : | |
| Plaintiff, | : | District Judge Michael R. Barrett |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| CYNTHIA D. DAVIS, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff, a prisoner at the Southern Ohio Correctional Facility ("SoCF"), filed this *pro se* civil rights lawsuit against Defendants SoCF Warden Cynthia D. Davis, former SoCF Corrections Officer C. Evans with SoCF mental health, SoCF Corrections Officer Sargeant M. Evans, SoCF Corrections Officer Sargeant M. Dillow, and SoCF Corrections Officer Lieutenant T. Crabtree, all in their individual capacities. (Complaint, Doc. 8, PageID 136-39). By separate Order, Plaintiff was granted leave to proceed *in forma pauperis*. (Doc. 7).

This matter is before the Court for an initial screen of the Complaint to determine whether it, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

**I.     SCREENING STANDARD OF REVIEW**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). However, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by

the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included the following provision in the statute:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> > (i) is frivolous or malicious;
> >
> > (ii) fails to state a claim on which relief may be granted; or
> >
> > (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B). *See also* 28 U.S.C. § 1915A(b). Thus, the Court must sua sponte dismiss this lawsuit if it determines that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To state a claim upon which relief may be granted, Plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). His complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

Although a complaint need not include "'detailed factual allegations' . . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint

will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

Further, a *pro se* complaint is liberally construed, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and "however inartfully pleaded," is held to "less stringent standards than formal pleadings drafted by lawyers." *Heyward v. Cooper*, 88 F.4th 648, 653-54 (6th Cir. 2023) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This "lenient treatment has limits" and "courts should not have to guess at the nature of the claim asserted." *Frengler v. GM*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)) (additional citations omitted).

## II.    ALLEGATIONS IN THE COMPLAINT

Plaintiff alleges multiple claims in five counts. (Complaint, Doc. 8, PageID 141-50).

### A. Count One

Plaintiff first alleges that on May 11, 2024, Defendants C. Evans targeted and harassed him. (*Id.* at PageID 141-42). Plaintiff alleges that when his housing range was called out for breakfast and passing the guard control booth, he "noticed non defendant Officer Johnson radio down the hallway as if to alert the metal detector officers that a specific prisoner was on their way." (*Id.*). Plaintiff alleges that a "large group of officers" were by the metal detector

3

"menacingly glaring at him." (*Id.* at PageID 142). Plaintiff alleges that Defendant C. Evans had cuffs and ordered Plaintiff to the wall, where he was cuffed. (*Id.*). Plaintiff alleges that he was "confused and unaware of C. Evans motive or intention," but that he still complied. (*Id.*). Plaintiff alleges that C. Evans was yelling at him, stating, "who do you think you are mother fucker," while the other officers were yelling at him and making comments like "your ass will be in the hole." (*Id.*). This incident occurred, Plaintiff alleges, after a similar incident the day before between C. Evans and another prisoner who was allegedly strip searched because C. Evans believed the prisoner made a "disrespectful comment" toward her. (*Id.* at PageID 141).

Plaintiff alleges that Defendant C. Evans escorted him to the Restrictive Housing ("RH") strip out cage, where another officer continued stating, "your ass will be in the hole today bitch." (*Id.* at PageID 142). While this male officer conducted a strip search, Plaintiff alleges that "C. Evans stated that her dick was probably bigger than [his] and insisted she would be waiting after he had dressed." (*Id.*). Plaintiff alleges that after the strip search, he was "again met with aggression" from C. Evans who stated to Plaintiff "come on motherfucker [I'm] escorting you to chow." (*Id.* at PageID 142-43). Plaintiff alleges that Defendant Mike Evans, C. Evans' husband, was waiting by the metal detector and "menacingly staring" at Plaintiff. (*Id.* at PageID 143). To intentionally embarrass and harass him, Plaintiff alleges that C. Evans escorted him through the dining hall in front of the other prisoners, who were asking what was going on. (*Id.*). Plaintiff alleges that C. Evans stated she would be waiting for him after he finished eating; and he alleges that after eating, C. Evans escorted him back through the prison to his cell. (*Id.*). Plaintiff alleges that C. Evans asked him "are we straight," to which Plaintiff responded "no" and he began submitting a harassment grievance. (*Id.*).

4

Sometime between 11:00 a.m. and 1:00 p.m. that same day, Plaintiff alleges that an announcement was made through the unit intercom that C. Evans was escorting him to lunch and she then returned to his cell. (*Id.* at PageID 143-44). Plaintiff alleges that C. Evans stated if he would not comply with her orders, he would be placed in RH and would not eat. (*Id.*). Plaintiff alleges that he refused to be "harassed and embarrassed," showing C. Evans the grievance from the morning's events. (*Id.*). Plaintiff alleges that he walked to lunch, but that C. Evans escorted him to the front of the dining hall, where he was ordered to "cuff up" by C. Evans and Defendant Crabtree without eating lunch. (*Id.* at PageID 144). From there, Plaintiff alleges that Crabtree escorted him to RH. (*Id.*). Plaintiff alleges that when asked why, Crabtree stated that "he had nothing to do with it." (*Id.*). Plaintiff alleges that while explaining to Crabtree what had occurred earlier in the day, Defendant M. Evans appeared and was "glaring" at Crabtree. (*Id.*). Plaintiff alleges that in a "fearful tone and manner," Crabtree stated, "you know I'm not going against my officers." (*Id.* (citing Exs. A-4 through A-11, Doc. 8-1, PageID 167-74)).

**B. Count Two**

Plaintiff next alleges that Defendants M. Evans and C. Evans came into work after conspiring to make "an effective plan to target, intentionally harass and discriminate against" him. (Doc. 8, PageID 145). To effectuate this plan, Plaintiff alleges that M. Evans falsified a conduct report against him as "retaliation for [M. Evans'] wife's inappropriate/unprofessional misconduct." (*Id.* (citing Ex. D-1, Doc. 8-4, PageID 188)). Plaintiff alleges that he had no interaction with either of these Defendants before these issues arose. (*Id.*).

Plaintiff also alleges that while he was in RH, Defendant M. Evans packed up Plaintiff's property as further retaliation. (*Id.*). Plaintiff alleges that during the pack up, M. Evans "took [his] viapath phone tablet, tossed out an unknown amount of legal documents to several of [his]

pending civil cases, destroyed [his] property," infringing on his right to access the courts.  (*Id.*).
Plaintiff alleges that some documents were either wet or missing and alleges that his charger,
headphones, clothing, and food items were missing as well.  (*Id.* at PageID 145-46).  Plaintiff
alleges that he was advised by the SoCF property room manager to file a theft/loss report with
his housing Sargeant—who was now M. Evans, the same person who signed off on the pack up
slip.  (*Id.* at PageID 146 (referencing Case No. 1:22-cv-453, Docs. 53, 54, 59, and 63)).  Plaintiff
alleges that he "felt deterred and effected/threatened" because Defendant Dillow had refused to
give him a copy of the falsified conduct report or conduct a hearing, and that it took two requests
before M. Evans provided the report on June 6, 2024, when Plaintiff alleges that he first learned
about the falsified conduct report.  (*Id.*).

### C.  Count Three

Plaintiff next alleges that Defendant Dillow, as the conduct report hearing officer in the
RH unit, tried to "shield" C. Evans and M. Evans when he failed to investigate their actions.
(Doc. 8, PageID 146-47).  Plaintiff alleges that Dillow failed to conduct a procedural hearing and
"refused to turn over, read, or investigate" his case.  (*Id.*).  He alleges that Dillow's actions were
done in collusion with Defendants C. Evans, M. Evans, and Crabtree.  (*Id.* at PageID 147).
Plaintiff alleges that he was found guilty of a rule violation in contradiction to what occurred on
May 11, 2024, which he also alleges supports his retaliation claims against Defendants.  (*Id.*).

### D.  Count Four

Plaintiff also alleges that Defendant Crabtree failed to intervene and colluded with the
other Defendants in sending Plaintiff to RH.  (*Id.*).  Plaintiff alleges that these failures subjected
him to "extremely deplorable conditions," including a corroded toilet, mold, and no property,
and alleges that he was denied a meal.  (*Id.* at PageID 147-48).

**E. Count Five**

Finally, Plaintiff alleges that Defendant Davis collaborated with the other Defendants and failed to act to correct her subordinates' behavior. (*Id.* at PageID 148). Plaintiff alleges that Davis was aware of and responsible for the other Defendants' actions, the prison conditions, legal mail issues, and the disciplinary abuse. (*Id.* at PageID 148-49). Plaintiff alleges that Davis "assisted" the behavior by allowing Defendants C. Evans and M. Evans go home to "plot and plan a strategic mission," and then allowed M. Evans to change posts to continue harassing Plaintiff. (*Id.* at PageID 149). The result, Plaintiff alleges, is that he has suffered distress and pain and endured time in cells covered in feces. (*Id.*). Plaintiff also alleges that he is currently housed in a cell with broken windows and faulty electrical, and that his range has rusted out showers with no lighting and black mold leading to toenail and fungal infections, which has all had a detrimental effect on his mental and physical health. (*Id.* at PageID 149-50). Davis has been aware of ongoing issues for over five years, Plaintiff alleges. (*Id.* at PageID 149).

Plaintiff seeks monetary damages and any other warranted relief. (*Id.* at PageID 151).

**III. ANALYSIS**

The undersigned understands Plaintiff to be raising the following claims:

1. Fourth Amendment claim against Defendant C. Evans for allegedly subjecting Plaintiff to an unreasonable strip search, while also making harassing and degrading sexual comments during the strip search. (*See* Count One).

2. First Amendment retaliation claims against Defendants C. Evans, M. Evans, Crabtree, and Dillow for allegedly harassing and targeting Plaintiff, including depriving him of a meal (C. Evans, Crabtree), filing a false conduct report and destroying his property (M. Evans) and shielding the others by failing to investigate the incidents (Crabtree, Dillow) because Plaintiff filed a grievance against C. Evans. (*See* Counts One-Four).

3. First Amendment access-to-the-courts claim against Defendant M. Evans for allegedly destroying Plaintiff's legal documents and prohibiting his access to file electronic grievances on his viapath tablet. (*See* Count Two).

7

4. Failure to investigate claims against Defendants Crabtree, Dillow, and Davis for allegedly failing to conduct a proper inquiry into C. Evans' actions and into M. Evans' falsified conduct report against Plaintiff. (*See* Counts Three, Four, and Five).

5. Eighth Amendment conditions of confinement claims against Defendants Crabtree and Davis for allegedly failing to keep SoCF in a suitable living condition. (*See* Counts Four and Five).

6. Supervisor liability claim against Defendant Davis for allegedly allowing SoCF employees to harass, target, and take abusive and retaliatory disciplinary actions against Plaintiff. (*See* Count Five).

7. Conspiracy claims against all Defendants for allegedly colluding to violate Plaintiff's constitutional rights. (*See* Counts One-Five).

8. Intentional infliction of emotional distress claims under Ohio state law against Defendant C. Evans for allegedly harassing Plaintiff with an unreasonable strip search, embarrassing Plaintiff by escorting him to and from meals, and unreasonably subjecting Plaintiff to the conditions in RH; against Defendant M. Evans for allegedly destroying Plaintiff's legal documents and property, and changing positions to be in Plaintiff's cell block range to continue harassing him; and against Defendant Crabtree for allegedly unreasonably subjecting Plaintiff to the conditions in RH. (*See* Counts One, Two, and Four).

At this stage of the proceedings, and without the benefit of further briefing, the undersigned concludes that Plaintiff's Fourth Amendment unreasonable strip search claim against Defendant C. Evans (Count One) and his retaliation claims against Defendants C. Evans and M. Evans (a portion of Count Two) should be permitted to **PROCEED** for further development. The undersigned cautions Plaintiff that no determination has been made regarding the merits of these claims or any defenses to them. Nor are Defendants C. Evans and M. Evans precluded from filing a motion to dismiss, a motion for a more definite statement, or other appropriate motions under the Federal Rules of Civil Procedure. *See, e.g.*, *Wiley v. Austin*, No. 8:20-cv-220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020). The Court is simply concluding that these claims may proceed to further development at this time.

The undersigned concludes, however, that Plaintiff's remaining claims should be **DISMISSED** for failure to state a claim upon which relief may be granted.

8

**A. Retaliation Claims Against Defendants Crabtree and Dillow**

Although Plaintiff may proceed on his retaliation claims against Defendants C. Evans and M. Evans at this juncture, his retaliation claims against Defendants Crabtree and Dillow fail to state a claim upon which relief may be granted. A prisoner's claim of retaliation for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). Retaliation claims require a plaintiff to plead that: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him that "would deter a [prisoner] of ordinary firmness from continuing to engage in that conduct"; and (3) the plaintiff's protected conduct motivated, at least in part, the defendant's adverse action. *Id.* at 394. Protected conduct under the First Amendment is not limited to formal grievances or petitions; submitting non-frivolous, informal complaints can qualify as protected First Amendment conduct. *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (citations omitted). Similarly, grievances *can* constitute protected conduct, but the underlying claims must have merit. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).

An action is only "adverse" for purposes of a First Amendment retaliation claim if it "would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (citation omitted). Certain actions, however, may be "so de minimis that they do not rise to the level of being constitutional violations." *Id.* at 398; *Maben*, 887 F.3d at 266. The plaintiff also bears the initial burden of establishing that the defendant acted with a retaliatory motive. *Maben*, 887 F.3d at 266. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citations omitted). In other words, a plaintiff

must show a "causal connection" between the protected conduct and the adverse action. *Thaddeus-X*, 175 F.3d at 394. Close temporal proximity between the protected activity and an adverse action may be sufficient to create an inference that the defendant's motive in taking the adverse action was retaliatory. *Maben*, 887 F.2d at 268 (citations omitted). But "an inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Id.* at 264 (quoting *Spies v. Voinovich*, 48 F. App'x 520, 524-25 (6th Cir. 2002)).

Plaintiff alleges that although he told Crabtree about the events from the morning of May 11, 2024, Crabtree still followed through in taking Plaintiff to RH's "deplorable" conditions and deprived him of a meal. (Complaint, Doc. 8, PageID 144, 147). Plaintiff failed to allege, however, that Crabtree was acting out of a retaliatory motive and instead suggested that Crabtree was fearful to go against the other Defendants. (*Id.* at PageID 144). Further, although Plaintiff alleges that Dillow found him guilty on a falsified conduct report as retaliation, he fails to connect Dillow's alleged actions to a retaliatory motive. (*Id.* at PageID 146-47). It is unclear whether Crabtree or Dillow knew that Plaintiff had engaged in protected conduct (i.e., filing a grievance against C. Evans), but in any event, Plaintiff does not allege they were motivated by that fact. (*See id.* at PageID 144, 146-47). Because Plaintiff's allegations against Crabtree and Dillow are too conclusory and unsupported by material facts to state plausible retaliation claims against them, the undersigned recommends that all such claims should be **DISMISSED**.

Having addressed Plaintiff's retaliation claims, the Court notes that it is unclear whether Plaintiff intended to also raise the alleged adverse actions themselves as standalone constitutional claims. If Plaintiff did intend to do so, then such standalone claims should also be dismissed.

First, to the extent that Plaintiff alleges a claim against Defendants C. Evans and Crabtree for depriving him of lunch, the denial of a meal on a single occasion is insufficient to state an Eighth Amendment claim. *O'Neill v. Adams Cnty. Jail*, No. 1:23-cv-200, 2024 WL 3754879, at *10 (S.D. Ohio Aug. 12, 2024) (quoting *Assi v. Hanshaw*, 625 F. Supp. 3d 722, 746 (S.D. Ohio 2022)) (citing *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011)). Next, to the extent that Plaintiff alleges a claim against Defendant M. Evans for falsifying a conduct report against him, a prisoner does not have a constitutional right to be free from false conduct violations. *Wood v. Williamson*, No. 2:24-cv-4096, 2024 WL 5186998, at *3 (S.D. Ohio Dec. 20, 2024) (quoting *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003)) (collecting cases). Finally, to the extent that Plaintiff alleges that M. Evans destroyed or took his property while in RH, in the absence of a showing that a state law remedy of conversion is insufficient, a prisoner's theft and destruction of property claims do not support a due process claim. *Freeman v. Spoljaric*, 667 F. Supp. 3d 636, 650 (S.D. Ohio Mar. 31, 2023) (quoting *Vicory v. Walton*, 721 F.2d 1062, 1065-66 (6th Cir. 1983)) (additional citations omitted). Accordingly, any such standalone claims should be **DISMISSED** for the failure to state a claim upon which relief may be granted.

### B. Access to the Courts Claim

Plaintiff's access-to-the-courts claim against Defendant M. Evans for allegedly destroying Plaintiff's legal documents also fails to state a claim upon which relief may be granted. It is well-settled that prisoners have a First Amendment right to access the courts. *Lewis*, 518 U.S. at 349-50 (citing *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977)). Prison officials must assure that prisoners have "adequate, effective and meaningful" access to the courts. *Patterson v. Mintzes*, 717 F.2d 284, 288 (6th Cir. 1983) (citing *Bounds*, 430 U.S. at 822). But to state a plausible access-to-the-courts claim, the plaintiff must identify the underlying

lawsuit—that is, the action that he was allegedly prevented from having access to—and describe

how his interests in that lawsuit were adversely affected by the alleged denial of access.

*Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  The plaintiff must also identify an actual

injury and official conduct that amounts to more than mere negligence.  *Harbin-Bey*, 420 F.3d at

578 (citing *Thaddeus-X*, 175 F.3d at 394).  "Examples of actual prejudice to pending or

contemplated litigation include having a case dismissed, being unable to file a complaint, and

missing a court-imposed deadline." *Id.* (citation omitted).

Plaintiff has failed to satisfy these pleading requirements.  Instead, Plaintiff generally

alleged that M. Evans violated his right to access the courts when M. Evans destroyed or took

Plaintiff's legal documents from his cell while being housed in RH.  (Complaint, Doc. 8, PageID

145-46).  While Plaintiff does mention his other pending cases in this Court (*id.* at PageID 144,

146, 148, 156-57 (citing Case Nos. 1:22-cv-313; 1:22-cv-453; 1:23-cv-98; and 1:25-cv-177)), he

does not allege any actual injury or explain how his other cases were adversely affected by M.

Evans's actions.  Plaintiff fails to allege how he was actually prejudiced by M. Evans allegedly

destroying the legal documents and thus fails to state an access-to-court claim upon which relief

may be granted.  *Harbin-Bey*, 420 F.3d at 578.  Plaintiff's access-to-the-courts claim against M.

Evans should therefore be **DISMISSED**.

### C.  Harassing or Derogatory Comments

Although Plaintiff may proceed at this juncture on his claim against C. Evans for

subjecting him to an unreasonable strip search, allegations regarding "[h]arassing or degrading

language by a prison official, while unprofessional and despicable, do[] not amount to a

constitutional violation." *Nichols v. Warnecke*, No. 2:24-cv-104, 2024 WL 5170120, at *5 (S.D.

Ohio Dec. 19, 2024) (quoting *Mallory v. Smith*, No. 3:17-cv-P253, 2017 WL 3484690, at *3

(W.D. Ky. Aug. 14, 2017) (collecting cases)); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.").  During the strip search, Plaintiff alleges that Defendant C. Evans made degrading statements to him, including calling him a "motherfucker," while other non-defendant officers made statements like "your ass will be in the hole today bitch."  (Complaint, Doc. 8, PageID 142-43).  These alleged statements alone do not provide a basis to state a plausible § 1983 claim, and any such claims should be **DISMISSED**.

### D.  Conditions-of-Confinement Claims

Plaintiff's conditions-of-confinement claims against Defendants Crabtree and Davis do not state a claim upon which relief may be granted.  The Eighth Amendment requires prison officials "to provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  But "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  Only extreme deprivations will rise to a constitutional violation because "routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted).

An Eighth Amendment conditions-of-confinement claim includes both objective and subjective components.  The objective component requires the plaintiff to show that the alleged harm was "objectively, sufficiently serious" and denied him "the minimal civilized measure of life's necessities."  *Farmer*, 511 U.S. at 834 (internal quotations and citations omitted).  Otherwise stated, the plaintiff must allege facts that establish an objectively intolerable risk of

serious harm.  *Id.* at 842, 846 n.9 (citations omitted).  The subjective component requires the plaintiff to plead and prove that the defendants "acted wantonly, with deliberate indifference to the plaintiff's serious needs." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (citing *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991)).

### 1.  *RH Conditions-of-Confinement Claim Against Defendant Crabtree*

Plaintiff has not stated a plausible conditions-of-confinement claim against Defendant Crabtree.  While housed in RH, Plaintiff alleges that Crabtree subjected him to "extremely deplorable conditions," including a cell that had a corroded toilet and mold, and further alleges that he had no property.  (Complaint, Doc. 8, PageID 147).  The length of exposure time to the alleged conditions is a required factor in the analysis.  *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017).  Short deprivations or exposures are not constitutional violations.  *O'Neill v. Adams Cnty. Jail*, No. 1:23-cv-200, 2024 WL 3754879, at *10 (S.D. Ohio Aug. 12, 2024) (citations omitted) (comparing the length of exposure from different conditions of confinement claims to assess the seriousness of the deprivation).  Although Plaintiff does not allege the exact amount of time he was in RH, it appears that the start date was May 11, 2024, and he was back in his regular cell less than a month later, by June 6, 2024.  (Doc. 8, PageID 144-46).  While the RH conditions may have been unpleasant, Plaintiff has not alleged that he was exposed to extreme deprivations during a lengthy period of time to state a plausible conditions-of-confinement claim against Defendant Crabtree.  Any conditions-of-confinement claims against Crabtree for the RH prison cell conditions should be **DISMISSED**.

### 2.  *Unrelated Conditions-of-Confinement Claims Against Defendant Davis*

Separately from the May 11, 2024 incident, Plaintiff alleges that he has been confined under "deplorable" conditions at SoCF for about five years, and that Defendant Davis has known

about these issues. (Doc. 8, PageID 148-50). Plaintiff alleges that his current and past prison cells have been covered in feces, had broken windows and faulty electrical, had showers covered in black mold due to the lack of cleaning supplies, which has worsened his toenail and fungal infections, and had corroded showers with no lighting. (*Id.* at PageID 149-50).

A plaintiff may not join unrelated claims and various defendants unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)) ("Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multiple claim, multiple defendant] suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees."). "[T]he proper remedy for . . . misjoinder is to sever the claims against the unrelated parties and dismiss those claims without prejudice." *Cage v. Michigan*, No. 16-cv-11679, 2018 WL 3729062, at *2 (E.D. Mich. Aug. 6, 2018) (citing Fed. R. Civ. P. 21) (additional citation omitted). Under Rule 21 of the Federal Rules of Civil Procedure, courts have "broad discretion 'to order a severance to avoid causing unreasonable prejudice and expense to the defendant . . . and to avoid great inconvenience in the administration of justice.'" *Proctor v. Applegate*, 661 F. Supp. 2d 743, 781 (E.D. Mich. 2009) (quoting *Nali v. Mich. Dep't of Corrs.*, No. 07-10831, 2007 U.S. Dist. LEXIS 98919, at *5 (E.D. Mich. 2007)).

Here, Plaintiff fails to tie these allegations about allegedly unlawful conditions-of-confinement during the past five years to the basis of this lawsuit; namely, C. Evans' actions on May 11, 2024, and the events unfolding from there. As pled, these conditions-of-confinement

15

allegations instead stem from an ongoing issue that began before the May 11, 2024, incident. Under Rule 21, Plaintiff's unrelated conditions-of-confinement claims against Davis should be **SEVERED** from this lawsuit and **DISMISSED without prejudice**.

### E. Failure to Intervene Claims

To the extent that Plaintiff alleges that by cuffing and escorting him to RH, Defendant Crabtree failed to intervene and protect Plaintiff from C. Evans (*see id.* at PageID 144, 147-48), such allegations fail to state a claim upon which relief may be granted. The Eighth Amendment prohibits cruel and unusual punishment, protecting inmates from the "unnecessary and wanton infliction of pain." *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). But corrections officers do not violate an inmate's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (citation omitted). An Eighth Amendment claim cannot be based on a *de minimis* use of physical force. *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (citation omitted); *Carlton v. Turner*, No. 05-1009, 2006 WL 955886, at *2 (6th Cir. Apr. 12, 2006) (citation omitted) (finding that not "every malevolent touch by a prison guard gives rise to a federal cause of action"). An officer may be liable for the failure to intervene in the use of excessive force when "(1) the officer observed or had reason to know that excessive force would be or was being used; and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Goodwin v. City of Painesville*, 781 F.3d 314, 328 (6th Cir. 2015) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

Here, Plaintiff does not allege sufficient facts that show Crabtree could have prevented or stopped C. Evans or another officer from using excessive force, such as during the strip search. In fact, Plaintiff's allegations against Crabtree occurred several hours after the strip search (*id.* at

16

PageID 144, 147-48), and Plaintiff does not allege any facts that could constitute excessive force during the lunchtime incident. Although Plaintiff alleges that Crabtree told him that he would not go against his officers while he was escorting Plaintiff to RH (*id.* at PageID 144), this statement, standing alone, is not enough to state a plausible failure to intervene claim. Plaintiff's failure to intervene claim against Crabtree should therefore be **DISMISSED**.

### F. Failure to Investigate Claims

Plaintiff's allegations that Defendants Crabtree, Dillow, and Davis failed to investigate the alleged incidents also fail to state a claim upon which relief may be granted. Plaintiff alleges that Crabtree failed to investigate the "true nature" as to why C. Evans wanted Plaintiff sent to RH; that Dillow found Plaintiff guilty on M. Evans' falsified conduct report without investigating; and that Davis failed to investigate her employees' actions related to this incident. (Complaint, Doc. 8, PageID 144, 146-49). None of these allegations are sufficient to show active unconstitutional conduct by Crabtree, Dillow, or Davis that was directed toward Plaintiff.

While prisoners have a First Amendment right to file grievances against prison officials, *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (citations omitted), the Sixth Circuit has held that "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citation omitted). A prison official's alleged failure to adequately investigate claims of misconduct does not rise to the level of "encouragement" to be held liable for such misconduct. *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). That is, prison officials whose only roles "involve the denial of administrative grievances or the failure to act" to remedy the alleged unconstitutional behavior are not liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citation omitted) ("[L]iability under § 1983

17

must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'").

In addition, to the extent that Plaintiff alleges that the grievance procedure failed to produce the correct outcome, such allegations fail to state a claim upon which relief may be granted because even though a prisoner has a right to file grievances, he does not have an inherent right to an "effective" grievance procedure. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (collecting cases). And to the extent that Plaintiff alleges that Crabtree, Dillow, or Davis failed to act, such claims also fail as a matter of law because a failure to act is generally not considered to be an adverse action. *Shehee*, 199 F.3d at 300. Any failure to investigate or failure to act claims should be **DISMISSED**.

### G. Supervisory Liability Claims

Plaintiff fails to allege a plausible claim against Defendant Davis in her role as a supervisor because Plaintiff does not allege that Davis had any personal involvement. It is well-settled that the *respondeat superior* doctrine does not apply in § 1983 lawsuits to "impute liability onto supervisory personnel." *E.g.*, *Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)). The mere fact that a defendant has a particular position or supervises other defendants who allegedly violated a plaintiff's rights is not enough to state a claim under § 1983. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). To hold a supervisor liable under § 1983, a plaintiff "must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate." *Wingo*, 499 F. App'x at 455 (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982)). For a claim against a supervisor to proceed, "a plaintiff must show that a

18

supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (quoting *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020)) (cleaned up and additional citations omitted).

Plaintiff has failed to allege any facts to indicate that Davis was aware of the other Defendants' actions or plans before the incidents occurred. As explained above, given the lack of any alleged personal involvement by Davis in the events underlying Plaintiff's claims, any supervisory liability claims against Davis should be **DISMISSED**.

## H. Conspiracy Claims

Plaintiff's allegations that Defendants conspired against him fail to state a claim upon which relief may be granted. To state a claim of civil conspiracy in violation of § 1983, a plaintiff must plead that there is "an agreement between two or more persons to injure another by unlawful action." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). A plaintiff must plead and prove that a "'single plan' existed," the alleged coconspirator "shared in the general conspiratorial objective," and that an "overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiff. *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Hooks*, 771 F.2d at 943-44). Additionally, "conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009) (finding that a conspiracy claim lacked the requisite specificity when the plaintiff "repeatedly recast[ed] that allegation as different constitutional violations").

19

Plaintiff alleges that C. Evans and M. Evans conspired against Plaintiff to harass and embarrass him, with C. Evans sending him to RH and M. Evans writing a false conduct report. He also alleges that Crabtree colluded in the scheme by escorting Plaintiff to RH without investigating the incident and that Dillow colluded by failing to investigate M. Evans' falsified conduct report, which Plaintiff alleges all culminates in him being subjected to "extremely deplorable conditions" in RH. (*Id.* at PageID 145-48). Plaintiff does not, however, allege facts that show the basis of his conclusions about the alleged conspiracy. He alleges that C. Evans and M. Evans went home to make a plan against him yet alleges no facts to show the basis for his belief that this occurred. Nor does Plaintiff allege facts that show a conspiratorial plan between C. Evans, M. Evans, Crabtree, and Dillow. Plaintiff's allegations are too speculative and conclusory to provide the requisite specificity for § 1983 conspiracy claims. *Moldowan*, 578 F.3d at 395. Plaintiff's conspiracy claims should therefore be **DISMISSED**.

## I. Intentional Infliction of Emotional Distress Claims

Plaintiff's allegations that Defendants acted intentionally to inflict emotional distress also fail to state a claim upon which relief may be granted. Intentional infliction of emotional distress is a state-law claim that requires a plaintiff to show that (1) the defendant "either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff"; (2) the alleged conduct was "so extreme and outrageous" that it went "beyond all possible bounds of decency"; (3) the defendant's actions were the "proximate cause" of the resulting injury; and (4) the "mental anguish" the plaintiff suffered is "serious and of a nature that no reasonable man could be expected to endure it." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 619 (6th Cir. 2014) (quoting *Pyle v. Pyle*, 463 N.E.2d 98, 103-04, 11 Ohio App. 3d 31 (Ohio Ct. App. 1983)).

20

This demanding legal standard sets a high bar for stating a plausible claim upon which relief can be granted, and Plaintiff has not alleged facts that are sufficient to clear that bar here. Specifically, Plaintiff has not alleged conduct that was "so extreme and outrageous" as to go "beyond all possible bounds of decency." *See Hayward*, 759 F.3d at 619-20 (finding an intentional infliction of emotional distress claim sufficiently pled where the alleged incident was a "violent, traumatic invasion, effected through an alarming and unnecessary show of force"). Plaintiff's intentional infliction of emotional distress claims should be **DISMISSED**.

## IV.    CONCLUSION

Having screened the Complaint, the undersigned Magistrate Judge **ORDERS** that Plaintiff be permitted to **PROCEED** at this time with the following claims:

1. Fourth Amendment unreasonable strip search claim against Defendant C. Evans; and

2. First Amendment retaliation claims against Defendants C. Evans and M. Evans.

The Court notes that Plaintiff has provided the appropriate service documents for Defendants C. Evans and M. Evans.  (*See* Doc. No. 1-9 (Summons Forms) and Doc. No. 1-10 (USM-285 Forms)).  The Clerk of Court is **DIRECTED** to forward copies of the Complaint and appropriate service documents to the United States Marshal Service.  Thereafter, the United States Marshal Service is **DIRECTED** to serve a copy of the Summons, the Complaint, and this Order on Defendants C. Evans and M. Evans.  The costs of service shall be advanced by the United States.

The undersigned **RECOMMENDS** that Plaintiff's remaining claims be **DISMISSED with prejudice**, including:

1. Retaliation claims against Defendants Crabtree and Dillow;

2. Deprivation of meal claims against Defendants C. Evans and Crabtree;

21

3. False conduct report claims, destruction and theft of property, and access to the courts claims against Defendant M. Evans;

4. Condition of confinement and failure to intervene claims against Defendant Crabtree;

5. Failure to investigate and failure to act claims against Defendants Crabtree, Dillow, and Davis;

6. Supervisory liability claims against Defendant Davis; and

7. Conspiracy and intentional infliction of emotional distress claims against all Defendants.

The undersigned also **RECOMMENDS** that the Court **SEVER** and **DISMISS** Plaintiff's unrelated condition of confinement claims against Defendant Davis (*see* Complaint, Doc. 8, PageID 148-50 (part of Count 5)) **WITHOUT PREJUDICE** to Plaintiff re-filing a separate action or actions including such claims if he so wishes within **thirty (30) days** of the date of this Order, or within the applicable statute of limitations period, whichever is later. *See, e.g.*, *Berry v. Ill. Dep't of Hum. Servs.*, No. 00-C-5538, 2001 WL 111035, at *18 n.22 (N.D. Ill. Feb. 2, 2001) (citation omitted). *See also* Fed. R. Civ. P. 20(a)(2); 21; *Harris v. Erdos*, No. 1:21-cv-104, 2022 WL 3053496, at *7 (S.D. Ohio Aug. 3, 2022).

Because Plaintiff fails to state a claim upon which relief may be granted against Crabtree, Dillow, and Davis, the undersigned **RECOMMENDS** that they be **DISMISSED** as defendants in this matter.

The undersigned also **RECOMMENDS** that the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons, an appeal of any Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Plaintiff may file Objections to these recommendations in the manner described below. He is reminded that he must keep this Court informed of his current address while this case is

pending.  The Clerk of Court is **DIRECTED** to send Plaintiff a copy of the Court's Pro Se

Handbook for his use in this case.

   **IT IS SO ORDERED AND RECOMMENDED**.


January 7, 2026                         */s/ Caroline H. Gentry*
                                        **CAROLINE H. GENTRY**
                                        **United States Magistrate Judge**


## PROCEDURE ON OBJECTIONS

   Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on a

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  A party may

respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).