**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **TERRANCE J. FEASTER,** | : | |
| | : | **Case No. 1:25-cv-580** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Judge Michael R. Barrett** |
| | : | |
| **CYNTHIA D. DAVIS, *et al.*,** | : | **Magistrate Judge Caroline H. Gentry** |
| | : | |
| **Defendants.** | : | |

---

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

NOW COME Correctional Officers, Matthew Evans and Kari Evans ("Defendants"), by and through counsel, and hereby move this Honorable Court to award summary judgment in their favor as to all of Plaintiff's remaining claims pursuant to Fed. R. Civ. P. 56. The grounds for this motion are more fully described in the Brief in Support set forth below.

Respectfully submitted,

D. ANDREW WILSON
Ohio Attorney General

s/ *Mallory Buelow*
MALLORY BUELOW (0088686)*
**Lead Counsel*
ANDREW T. GATTI (0086854)
Senior Assistant Attorneys General
Criminal Justice Section
Corrections Litigation Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
P: 614-644-7233/F: 855-665-2568
Mallory.Buelow@OhioAGO.gov
Andrew.Gatti@OhioAGO.gov

*Counsel for Defendants*

**BRIEF IN SUPPORT**

## I. INTRODUCTION AND BACKGROUND

Plaintiff, Terrance J. Feaster ("Plaintiff"), currently incarcerated by the Ohio Department of Rehabilitation and Correction ("ODRC") at the Toledo Correctional Institution ("ToCI") filed a Complaint on August 13, 2025 seeking monetary damages for alleged constitutional violations of his First, Eighth, and Fourteenth Amendment rights against five (5) defendants. At all times relevant to his Complaint, Plaintiff was incarcerated at the Southern Ohio Correctional Facility ("SOCF"). After an initial screening of the Complaint by the Court pursuant to 28 U.S.C. § 1915(e)(2)(B), on January 7, 2026, the Magistrate Judge recommended that Plaintiff be allowed to proceed on a Fourth Amendment claim for unreasonable strip search against Defendant K. Evans (Plaintiff's Count 1) and First Amendment retaliation claims against both Defendants K. Evans and M. Evans (a portion of Plaintiff's Count 2). [Doc. 10 at PageID # 224]. It was further recommended that all remaining counts against all named defendants be dismissed without prejudice. [*Id.* at PageID # 224-225]. While this Court has not yet adopted the Magistrate Judge's recommendations, Plaintiff failed to file any objections challenging the Magistrate Judge's Report and Recommendations, despite being warned of the consequences, and therefore forfeits his rights to contest the dismissed claims. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Carter v. Mitchell*, 829 F.3d 455, 472 (6th Cir. 2016). Therefore, this Motion for Summary Judgement addresses only those claims recommended to proceed.

In his Complaint, Plaintiff alleges that, on May 11, 2024, Defendant K. Evans[1] targeted and harassed him as he walked through the metal detector on the way to breakfast. [Doc. 8, PageID # 142]. Plaintiff admittedly speculated that, after entering the L-side corridor, a non-defendant officer appeared to radio down to the correctional officers stationed near the metal

[1] Plaintiff misidentifies Defendant Kari Evans as "C. Evans" in his Complaint.

detectors at the other end of the hallway to alert them to an oncoming inmate of interest. [*Id.*]. Plaintiff alleges that, once he approached the metal detector post, Defendant K. Evans, cuffs in hand, ordered him against the wall for seemingly no reason whatsoever, where she stated her name and cuffed him. [*Id.*]. Plaintiff alleges that he remained quiet and compliant as officers yelled at him and Defendant K. Evans berated him stating, "[W]ho do you think you are motherfucker?" [*Id.*]. Plaintiff claims that this incident arose after a similar incident involving Defendant K. Evans and a different inmate whereby Defendant K. Evans targeted an inmate and subjected him to a strip search because Defendant K. Evans thought he made a disrespectful comment toward her. [*Id.*].

Plaintiff alleges that he was escorted to restrictive housing ("RH") by Defendant K. Evans. Once at the strip out cage in restrictive housing, another non-defendant, male correctional officer conducted a strip search of Plaintiff. [*Id.*]. During the strip search, Plaintiff alleges that Defendant K. Evans stated to him that "her dick was probably bigger than the Plaintiff's and insisted she would be waiting [for him] after he had dressed." [*Id.*].

Plaintiff alleges that, after being released from the restrictive housing strip out cage, he was met with further aggression by Defendant K. Evans and escorted to chow. [*Id.* at PageID # 143]. Plaintiff stated that, during the escort, he observed Defendant K. Evans' husband, Defendant M. Evans[2], sitting on the bench behind the metal detectors glaring at him as he passed by. [*Id.*]. Plaintiff alleges that Defendant K. Evans escorted him throughout the chow hall, causing him embarrassment as other inmates looked on curious as to why he was being escorted. [*Id.*]. As he left the chow hall after eating, Plaintiff alleges that Defendant K. Evans was waiting for him and ordered him to the side. [*Id.*]. Plaintiff then stated that Defendant K. Evans escorted him back through the prison to his cell. [*Id.*].

[2] Plaintiff misidentifies Defendant Matthew Evans as "Mike Evans" in his Complaint.

Plaintiff stated that, once back in his cell, he immediately e-filed a grievance. [*Id.*; Grievance ID #: SOCF000000006540, Doc. 8-1, PageID # 162]. Plaintiff's Informal Complaint Resolution submitted on May 11, 2024 ("ICR") alleges misconduct by "Karen" Ed' Mans". On May 14, 2024, institutional staff member J. Kraut issued a response stating, "There is no officer here named Edmonds. I do not believe this officer was making any advance towards you." [*Id.*]. Worth noting, in his Complaint, Plaintiff stated affirmatively that Defendant K. Evans identified herself to him *by name* upon first approach, which clearly contradicts that which he wrote in the above ICR he submitted on the same date and immediately after the alleged incident in which he glaringly did not know who the correctional officer was to whom he was referring. [*See* Doc. 8 at PageID # 142]. This undoubtedly undermines the veracity of the allegations he wields against, at the very least, Defendant K. Evans. Nevertheless, institutional staff rejected his ICR based upon the merits. [Doc. 8-1 at PageID # 162]. Plaintiff thereafter did not escalate the ICR to a grievance. [*Id.*].

Plaintiff further alleges that, between the hours of 11:00am and 1:00pm on the same date, May 11, 2024, an announcement was made over the unit intercom that Defendant K. Evans would be escorting Plaintiff to lunch. [Doc. 8 at PageID # 143]. Once Defendant K. Evans arrived at his cell, he was advised that, if he did not comply with Defendant K. Evans' orders, he would be placed in restrictive housing. [*Id.*]. Plaintiff admittedly refused to comply and claims he showed Defendant K. Evans the ICR he'd just filed against her. [*Id.* at PageID # 144]. Plaintiff alleges that, once shown the ICR, Defendant K. Evans left his cell, and he walked along with fellow inmates to the dining hall. [*Id.*]. As he approached the metal detector guard post, Plaintiff alleges that Lt. Crabtree and Defendant K. Evans ordered Plaintiff to cuff up where he was taken to restrictive housing. Plaintiff claims to have seen Defendant M. Evans along the

escort route to RH "glaring" at Lt. Crabtree. Plaintiff here insinuates, without evidence, that Lt. Crabtree was acting at the behest of Defendant M. Evans. [*Id.*].

Plaintiff continues on in his Complaint lodging allegations of conspiracy between Defendants K. Evans and M. Evans to "target, intentionally harass and discriminate against plaintiff." [Doc. 8 at PageID # 145]. Specifically, Plaintiff alleges that Defendant M. Evans filed a false Conduct Report against him for events that occurred between the hours of 11:00am and 2:00pm on May 11, 2024 in retaliation for filing an ICR against Defendant K. Evans, his wife. [*Id.*]. Plaintiff alleges that Defendant M. Evans falsified Conduct Report No. SOCF-24-001506 alleging violations of institutional rules 4.4 Encouraging or creating a disturbance and 5.2 Disobedience of a direct order. [*Id.*; Doc. 8-4, PageID # 188]. In the Conduct Report, signed by Defendant M. Evans as the Charging Official, the supporting facts are stated as follows: "Be advised on the above date and time. I C/O Evans was supervising the noon meal when I observed I/P Feaster (551-840) being loud and disruptive in the hallway. I Officer Evans gave multiple verbal directives to not yell in the hallway. To which he replied 'Shut the fuck up nobody has to do that shit this place is weak as water' at that time. I notified the zone L.T and the said l/P was escorted from the area." [Doc. 8-4 at PageID # 188]. A hearing was held on May 16, 2024, in Case No. SOCF-24-001506, wherein Plaintiff was found guilt of violating Rules 5.2 Disobedience of a direct order and 5.7 Disrespect towards another person, including instigation of, or perpetuating fighting. [*Id.*]. As a result, Plaintiff received a thirty (30)-day commissary restriction. [*Id.*]. Though having had the opportunity to be heard on his behalf at his hearing, Plaintiff claims that the report was falsified and that he never saw Defendant M. Evans during this time period on May 11, 2024 until after he was already being escorted to RH by Lt. Crabtree. [Doc. 8 at PageID # 145; Doc. 8-4 at PageID # 188].

Plaintiff further alleges that sometime after Plaintiff was escorted to RH by Lt. Crabtree, Defendant M. Evans conducted the pack up of Plaintiff's property with "retaliatory intent." [Doc. 8 at PageID # 145]. Plaintiff makes unsupported allegations that Defendant M. Evans took his his ViaPath tablet, tossed out an unknown amount of legal documents to several of the Plaintiff's pending civil cases, and destroyed his personal property. [*Id.*]. Plaintiff claims that he brought this issue to Lt. Terry in the property room and was told to file a theft/loss report with his L8 Sergeant. [*Id.* at PageID #146]. Plaintiff alleges that once he returned to his cell, he came to realize that not only did M. Evans sign off on the pack up slip, which he claims is evidenced in other, unrelated civil actions brought by Plaintiff in this Court, but not made evidence in this case, but that Defendant M. Evans was his current L8 Sergeant. [*Id.*]. Plaintiff, however, did not file an ICR against Defendant M. Evans for this alleged property theft/damage. In fact, Plaintiff makes no mention of it in any ICR filed concerning the events of May 11, 2024.

On October 21, 2025, Plaintiff filed this action without having exhausted his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA").

## II. LAW AND ARGUMENT

### A. Legal Standard – Fed. R. Civ. P. 56

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is applicable if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

After a moving party has met its initial burden of production, the burden shifts to the non-

moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The nonmoving party cannot rest on his pleadings but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The absence of additional evidence to support a party's position beyond his own self-serving testimony is insufficient to overcome a motion for summary judgment." *Britenriker v. Mock*, 2009 U.S. Dist. LEXIS 66478, fn.1 (N.D. Ohio July 31, 2009); *see also Evans v. Techs. Application & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1994). "When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim." *United States v. Clinkscale*, 2014 U.S. Dist. LEXIS 103942, *10 (N.D. Ohio July 30, 2014) (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989).

"The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Id.* at *8-9 (citing *Anderson* at 249).

In order to overcome a motion for summary judgment, the non-movant must "designate specific facts in affidavits, depositions, interrogatories, or other factual material" from which a reasonable jury could find in his favor. *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F.Supp.2d 846, 849 (S.D. Ohio 2011). Plaintiff relies on out-of-court statements in third-party declarations submitted to this Court as attachments to his Complaint used for the truth of the matter asserted, which is improper hearsay and not admissible in court. Plaintiff must point to evidence, which is both admissible ***and*** from which, if presented at trial, a jury may find in his favor. Here, Plaintiff simply relies on his own self-serving pleadings and on inadmissible

statements made by third-parties. In *Citizens Bank v. Cinema Park L.L.C.*, 2010 U.S. Dist. LEXIS 7725, *7 (6th Cir.), the Sixth Circuit agreed, stating "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" Here, Plaintiff fails to point to any factual evidence outside of his own self-serving statements to substantiate any of his claims against Defendants.

**B. There is No Genuine Issue of Material Fact to Support a Fourth Amendment Constitutional Violation Against Defendant K. Evans**

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. Amend. IV. "[N]ormally invasive practices, like requiring inmates to expose their body cavities for visual inspection, are permissible when inside prison walls." *Hargrove v. Frisby*, 2018 U.S. Dist. LEXIS 98017, *4 (S.D. Ohio June 12, 2018) (citing *Bell v. Wolfish*, 441 U.S. 520, 537 (1979) (finding searches reasonable under the Fourth Amendment). Plaintiff claims that he was targeted by Defendant K. Evans and strip searched based upon a speculation that Defendant K. Evans believed Plaintiff to have made a disrespectful comment toward her. [Doc. 8 at PageID # 142]. It is apparent here, though, that Plaintiff's primary complaint is that he experienced continued embarrassment due to the unfounded strip search and continued escort in front of the inmate population. Plaintiff states that he made no such comments towards Defendant K. Evans, and therefore, was improperly subjected to the search. However, no evidence exists that this is the reason he was subjected to the search in the first place. Plaintiff claims are based on speculation and not in fact. Plaintiff attaches to his Complaint several declarations from other inmates who claim to have been present during the first encounter between Defendant K. Evans and Plaintiff. [Doc. 8-1, Page ID # 167-174]. However, this is inadmissible hearsay and not sufficient to withstand a motion for summary judgment.

"[T]he Supreme Court has given correctional officers wide latitude 'to devise reasonable

search policies to detect and deter the possession of contraband in their facilities.'" *Hargrove*, 2018 U.S. Dist. LEXIS 98017 at *6 (quoting *Florence v. Bd. of Chosen Freeholders of Cnty. Of Burlington*, 566 U.S. 318 (2012); *see also Stoudemire v. Mich. Dept. of Corr.*, 705 F.3d 560, 573-74 (6th Cir. 2013) (applying principles of *Florence* to an individual search, and holding that "[a]bsent proof to the contrary, we must assume that a search of a prisoner is initiated in an effort to detect and deter contraband."). "Reasonable suspicion is not required for visual body cavity searches of convicted felons." *Id.* citing *Stoudemire*, 705 F.3d at 575 ("[S]uspicionless strip searches [are] permissible as a matter of constitutional law, but only so long as they [are] reasonable under the circumstances...."). Further, Plaintiff makes no assertion and can provide no evidence that the search of his person was conducted in an overly intrusive manner or in a place where he was overly exposed to public view, as he was taken to the strip out cage in RH. The mere fact that Plaintiff was subjected to such a suspicionless search is not sufficient to state a claim under 42 U.S.C. §1983, and Plaintiff can provide no evidence to support such a claim.

**C. There is No Genuine Issue of Material Fact to Support a Claim of Retaliation Against Either Defendant in Violation of his First Amendment Rights**

"A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Lumbard v. Lillywhite*, 815 F.App'x 826, 834 (6th Cir.2020) (citing *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001)). A prisoner's claim of retaliation for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a First Amendment retaliation claim, a plaintiff must establish the following three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taking against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. at 394.

"An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Young v. Mulvaine*, 2024 U.S. Dist. LEXIS 113102, *12 (N.D. Ohio June 27, 2024) (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). "An inmate cannot, however, 'immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory.'" *Id.* (quoting *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002) (citing *Ward v. Dyke*, 58 F.3d 271, 274-75 (6th Cir. 1995)). "'This right is protected . . . only if the grievances are not frivolous.'" *Id.* (quoting *Herron*, 203 F.3d at 415. "A complaint is frivolous if it lacks an arguable basis in law or fact — frivolity 'embraces not only the inarguable legal conclusion, but also the fanciful factual allegation.'" *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Further, "'if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one.'" *Id.* (quoting *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001)).

The plaintiff bears the initial burden of establishing that the defendant acted with a retaliatory motive. *Maben*, 887 F.3d at 266. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Williams v. Bates,* 1994 U.S. App. LEXIS 34260, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994) (unpublished) (holding that the plaintiff's claim of retaliatory transfer was "wholly conclusory and so [was] insufficient to state a cause of action under § 1983"). Therefore, a plaintiff must show a "causal connection" between the protected conduct and the adverse action. *Thaddeus-X*, 175 F.3d at 394. Close temporal proximity between the protected activity and an adverse action may be sufficient to create an

inference that the defendant's motive in taking the adverse action was retaliatory. *Maben*, 887 F.2d at 268 (citations omitted). But "an inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Id*. at 264 (quoting *Spies v. Voinovich*, 48 F. App'x 520, 524-25 (6th Cir. 2002)). Plaintiff can provide no evidence that either Defendant K. Evans or Defendant M. Evans acting with retaliatory motive. Plaintiff's self-serving statements are not sufficient to withstand a motion for summary judgment.

Here, Plaintiff offers only unsupported and conclusory allegations of retaliation. There is no evidence in the record outside of Plaintiff's own statements as plead in his Complaint that would create a genuine issue of material fact such that a reasonable jury could find in his favor. *See Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F.Supp.2d 846, 849 (S.D. Ohio 2011). Plaintiff relies upon temporal proximity and conclusory assertions not based in fact as support for his retaliation claim. Further, Plaintiff can provide no evidence to support a constitutional violation for retaliation. Therefore, Defendants are entitled to judgment as a matter of law as to Plaintiff's First Amendment retaliation claims.

**D. Defendants are Entitled to Qualified Immunity**

Qualified immunity provides governmental officials with the ability to "reasonably anticipate when their conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (*quoting Davis v. Scherer*, 468 U.S. 183, 195 (1984)). Qualified immunity is "an entitlement not to stand trial or face the other burdens of face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "[I]t provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Determining whether a government official is entitled to qualified immunity is a two-part analysis. First, the Court must determine whether there was a constitutional violation. *See Phillips v. Roane County*, 534 F.3d 531, 539 (6th Cir. 2008). Second, the Court must determine whether the law was clearly established. *Id*. at 545. "For a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson*, 483 U.S. at 639))). In other words, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

To overcome the qualified immunity defense, "there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitely unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Qualified immunity itself "gives ample room for mistaken judgments by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)); *see also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). Once raised by a defendant, the plaintiff "bears the ultimate burden of proof to show that [government officials] are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 Fed. Appx. 491, 494 (6th Cir. 2012) (quoting *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005)).

Here, Plaintiff failed to establish that any conduct by either Defendant rises to the level of a constitutional violation, and therefore, they are entitled to qualified immunity.

### E. Plaintiff Failed to Exhaust Administrative Remedies as Required by 42 U.S.C. § 1997e

"Failure to exhaust administrative remedies is an affirmative defense under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, that the defendant bears the burden of establishing." *Andrews v. Ward*, 2026 U.S. App. LEXIS 21884, *4 (6th Cir.) (citing *Napier v. Laurel County*, 636 F.3d 218, 225 (6th Cir. 2011)). A Court should grant summary judgment in this context "only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (quoting Fed. R. Civ. P. 56(a))).

**i. The Prison Litigation Reform Act**

Under the Prison Litigation Reform Act of 1996 ("PLRA"), Congress set forth a requirement of "invigorated exhaustion provision" so as to allow prisoners to have their grievances investigated and addressed by prison administrators in hopes of resolving disputes at the lowest level possible. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Under this process, prison officials are also provided with an opportunity to gather evidence in preparation of an administrative record. *Id*. When it enacted the PLRA, Congress made exhaustion of administrative remedies mandatory as a prerequisite for inmates filing suit in federal courts. 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 638 (2016). The express language of the mandate is as follows:

> [n]*o action shall be brought* with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until* such administrative remedies as are available *are exhausted*.

(Emphasis added.) 42 U.S.C. § 1997e(a).

This provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other

wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 201, 211 (2007).

To satisfy the PLRA's exhaustion requirement, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules." *Woodford*, 548 at 88. These rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford* at 90-91.

**ii. Ohio's Inmate Grievance Procedure**

Ohio's prison grievance system involves a three-step process: (1) submitting an Informal Complaint Resolution ("ICR"); (2) a Notification of Grievance ("NOG"); and (3) an appeal to the Office of the Chief Inspector ("Appeal"). Ohio Admin. Code ("O.A.C.") § 5120-9-31(J)(1)-(3). First, within fourteen (14) days of the event giving rise to the complaint, an ICR must be sent to "the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint" that is specific as to "dates, times, places, physical descriptions of said personnel giving rise to the complaint. O.A.C. § 5120-9- 31(J)(1). If the staff member does not provide a response, this step is waived, and the inmate may proceed to step two (2). *Id.*

If, after the first step, the matter is not resolved, whether it be due to the inmate being dissatisfied with the response or due to waiver, then the incarcerated individual can then, within fourteen (14) days, escalate the grievance with an NOG to the Inspector of Institutional Services ("IIS"). O.A.C. § 5120-9-31(J)(2). The IIS has fourteen (14) days to provide a written response to the grievance. *Id.* If a disposition has not been rendered after twenty-eight (28) days from

receipt of the grievance, the complaint is deemed unresolved, and the inmate may proceed to step three. *Id.*

Lastly, if the inmate is dissatisfied with the disposition of the grievance, an Appeal may be filed within fourteen (14) days to the Office of the Chief Inspector. O.A.C. § 5120-9- 31(J)(3). The Chief Inspector then has thirty (30) days to provide a written response to the appeal. *Id.* "The decision of the chief inspector or designee is final." *Id.* A plaintiff's failure to fully complete the first step, and continue on to the second and third steps, in the ODRC grievance process prior to filing suit is fatal to his or her claims. *Williams v. Harris*, 2012 U.S. Dist. LEXIS 108339, *28-29 (S.D. Ohio Aug. 2, 2012). Exhaustion is required even if the prisoner "believe[s] the procedure to be ineffectual or futile." *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (quoting *Pack v. Martin*, 174 F. App'x 256, 262 (6th Cir. 2006)). If a prisoner fails to exhaust or only partially exhausts his administrative remedies before filing his lawsuit, the court must dismiss the case. *Hopkins v. Ohio Dep't of Corr.*, 84 F. App'x 526, 527 (6th Cir. 2003).

The Sixth Circuit requires incarcerated individuals to make affirmative efforts to comply with administrative procedures. *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011); *Napier*, 636 F.3d at 223-224. "[A]n inmate cannot simply . . . abandon the process before the completion and claim that he has exhausted his remedies[.]" *Hartsfield v. Vidor*, 199 F.3d 305, 306 (6th Cir. 1999). In other words, proper exhaustion requires prisoners to complete all levels of appeal, as outlined in O.A.C. § 5120-9-31(J), not just some of them. *Blissit v. Fiquris*, 345 F. Supp. 3d 931, 940 (S.D. Ohio 2018) (dismissing Plaintiff's Complaint when Plaintiff did not complete step two and filing a NOG within the fourteen-calendar day deadline and then further proceeding to step three).

The statute expressly bars a federal action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). However, the statute 'contains' its own, textual exception to mandatory exhaustion' that applies when remedies are not 'available.'" *Sultaana v. McConahay*, 2025 U.S. Dist. LEXIS 192674, *26 (N.D. Ohio Sept. 30, 2025) (quoting *Lamb v. Kendrick,* 52 F.4th 286, 292 (6th Cir. 2022)). Courts have "excused a prisoner's lack of complete compliance when the improper actions of prison officials render the administrative remedies functionally unavailable," *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014). "[I]nmates are not required to exhaust remedies that are effectively unavailable—such as when the process is a dead end, is functionally unusable, or is thwarted by prison officials—the record does not support such a finding here." *Lumbus v. Weishar*, 2026 U.S. Dist. LEXIS 156859, *13 (S.D. Ohio July 15, 2026) (citing *Wiley v. Ky. Dep't of Corr.*, 2020 U.S. App. LEXIS 27030, *4-5 (6th Cir. Aug. 25, 2020).

Notwithstanding, "even if an inmate has evidence to show that an administrative procedure was unavailable, he is not automatically absolved from the PLRA's exhaustion requirement because this Circuit requires inmates to make 'affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Lamb*, 52 F.4th at 293 (quoting *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015) (quoting *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011) (internal quotation marks omitted))). "'When a prisoner makes affirmative efforts to comply but does not succeed, we analyze whether those efforts to exhaust were sufficient under the circumstances.'" *Id.* (quoting *Lee* at 677 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) (internal quotation marks omitted))).

Plaintiff in this matter states that "S.O.C.F. I.I.S. stonewalled and [r]oadblocked the

process by denying access to shared tablet and complete refusal to investigate."[Doc. 8 at PageID # 154]. However, Plaintiff cannot present any credible evidence to show that anyone interfered with his ability to properly complete the grievance process. *Barassi v. Lewis*, 2019 U.S.App. LEXIS 18297, *6 (6th Cir. 2019) (upholding the district court's grant of summary judgment for the defendant where plaintiff had completed the first two steps, but not the final step of the grievance process).

**iii. Plaintiff Failed to Utilize the Ohio Administrative Grievance Procedure**

Viewing the evidence in the light most favorable to the non-moving party, Defendants are entitled to summary judgment because Plaintiff failed to properly utilize all steps of the Ohio Administrative Grievance Procedure. Plaintiff claims he filed informal complaints and grievances but makes no reference to appealing any of the decisions. This is fatal to Plaintiff moving forward.

The Sixth Circuit requires an incarcerated individual to demonstrate affirmative efforts to comply with administrative procedures before claiming that he is excused from exhausting those procedures due to their unavailability. *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 223. Furthermore, the Sixth Circuit has repeatedly held that even if an inmate requests a grievance form from prison officials, and is denied, it does not excuse an inmate from exhausting his administrative remedies. *Lyle v. Jackson*, 49 F. App'x 492 (6th Cir. 2002).

Here, Plaintiff simply failed to exhaust his administrative remedies prior to filing suit, and he cannot demonstrate that he made affirmative efforts to comply with the requirements. Moreover, there is nothing, outside of his own self-serving statements, to demonstrate that Plaintiff did not have full access to the administrative grievance process.

On May 11, 2024, Plaintiff submitted an ICR under Grievance ID #: SOCF000000006540, stating the following:

> On 5.11/2024 between 7:00am-8:00am officer name "Karen" Ed' Mans" is what this c.o. told me pulled me out of line in front of the control booth and metal detector explaining something about knocking on the L sid e control booth the day before. First I will address that I did knock on the booth wall as to greet and acknowledge c.o. Ms. Irving not this c.o. Ed'Man and once I realized I kept walking. On the above day and time the c.o. in question was lying in wait and immediately sent me to J2 for strip out, prior to strip out this c.o. said unwanted and inappropriate things to the effect and I quote " I have a bigger dick than my husband and I wear his pants at home and to work" verbatim! Not to be insensitive to the LGBTQ/ Trams community but this was out of context and weird. Anyway this c.o. proceeded to escort me in a harassing manner all the way to chow and back in her husband's baggy pants. I'm not sure what this c.o. wants from me but I'm not buying into these advances, No thanks! [sic],

[Doc. 8-1 at PageID # 162]. On May 14, 2024, institutional staff member J. Kraut issued a response stating, “There is no officer here named Edmonds. I do not believe this officer was making any advance towards you.” [*Id.*]. Plaintiff thereafter failed to escalate this ICR to a grievance, and therefore, failed to exhaust his administrative remedies as to this claim.

Plaintiff further proffers in his Complaint that, on May 19, 2024, he submitted a handwritten ICR to institutional staff member A. Hockett, for the same claim stating the following:

> On 5/11/24 between 7:00am - 8:00am I was met by c/o Mrs. Evans at the Metal Detector with her husband c/o M Evans witnessing his wife First cuff me up and Take me to J2 strip out where she began to yell scurrilous sexual comment about he genitalia and it’s size. refer to e-filed grievance on 5/11/24 11:30am – 12:00pm submitted. C/o Evans stalk, discriminate, harass, and target me after strip search via the hallway “shift” then thru East IDR chow Hall, then all the way back to L8 cell #29 while attempting to provoke me and threatening J2 RH/segregation. After ignoring this c/o, she then showed up at my cell Front at lunch on the above date between 11:30am – 12:00 pm and stated “either be escorted to chow or don’t eat.” I stated “You don’t have the authority after asking c/o Miller to deadlock my cell and refusing the activate her BWC as I requested She left after seeing my e-filed grievance. I was then released to chow with my block & Range and once I got to chow I was cuffed by c/o Evans and escorted by LT. Crabtree to J2 For unknown

> reasons and told I would be receiving a clearly falsified/Fabricated Conduct Report by c/o Mrs. Evans" [sic]

[Doc. 8-2, PageID # 177]. However, the ICR form appears to have never been submitted to the supervisor, as procedurally required. This is evidenced by the lack of staff signature at the bottom of the form, along with the fact that the pink copy would have been submitted to the Inspector per the top of the form. Plaintiff would have retained a goldenrod-colored copy, not the unsigned pink one Plaintiff provides the Court. [*Id.*]. Further, no Grievance ID # was assigned. [*Id.*].

Plaintiff additionally attached to his Complaint, a handwritten pink Notification of Grievance form ("NOG"), dated June 10, 2024, indicating that the grievance was related to his ICR from May 19th for the same incident, which was not responded to by institutional staff. [*Id.* at PageID # 178]. Here, Plaintiff mentions, for the first time, allegations against Defendant M. Evans for "conducting pack up of [his] property and discarding/Loss of [his] property." [*Id.*]. However, the filing of a grievance to this effect was not received by institutional staff, nor reflected in their electronic system. Notably, Plaintiff electronically filed other ICRs and grievances within this time period, yet for some reason unknown, provides as the only "evidence" of these filings in paper form absent any institutional staff writing or signature indicating their receipt. [*Id.* at PageID # 181-184]. Notwithstanding, even were this NOG to have been submitted, his allegations against Defendant M. Evans are made well beyond the fourteen (14)-day period within which a complaint must be filed following an incident, which allegedly occurred on May 11, 2024, and is thus untimely. Further, Plaintiff must have followed this grievance through appeal, which he has not done.

Attached to his Complaint, Plaintiff proffered evidence of a handwritten ICR dated 5/19/2024 submitted to and signed by institutional staff member A. Hockett. In this ICR, Plaintiff states as follows:

> On 5/11/24 between times 7:00am – 8:00am as well as between 11:00am – 1:00pm I was First sexually harassed by c/o Mrs. Evans, then stalked, discriminated against, and targeted when she decided to follow me, strip search me while making unnecessary, scurrilous sexual comments about her genitalia to me, following me throughout the prison via J2 strip cage to Metal Detector, to and thru the hallway, to East IDR Chow Hall, then all the way back to L8 cell 29 where I was housed, then attempted to do it again at lunch giving me the ultimatum to Eat chow via Her Escort or be denied/deprived lunch meal. After expressing she lacked authority to make such orders. I then proceeded to chow with my block and Range After her attempts at my cell front and she refused to Read my ICR or BWC Policy 10-SAF-22 as I requested her to activate her BWC, I was immediately cuffed and escorted to J2 and invoked my right to constant watch. While being escorted to J2 I requested my Basic Human Right to a meal and sustenance which was denied by LT. T. Crabtree after repeatedly asking I was still deprived purposely and Intentionally like c/o Mrs. Evans proclaimed." [sic]

[*Id.* at PageID # 191]. This ICR was entered into the grievance system by A. Hockett under Grievance ID #: SOCF000000006701 on May 23, 2024 on behalf of Plaintiff. [*Id.* at PageID # 181]. On the same date, institutional staff member B. Trelka issued the following response indicating to Plaintiff that his complaint was outside the scope of the grievance procedure as it involved a hearing officer decision and was instructed to follow the ICR process through the inspector's office per AR 5120-9-31 for inappropriate supervision claims, please follow the ICR process through the inspector's office per AR 5120-9-31. [*Id.*]. Plaintiff neither escalated this to a grievance nor sought relief for inappropriate supervision using the ICR process through the inspector's office as instructed. [*Id.*].

## III. CONCLUSION

The Court should grant summary judgment in favor of Defendants as to all of Plaintiff's claims against them. There are no genuine issues of material fact. After construing all of the

evidence on the record in favor of Plaintiff, reasonable minds can come but to only once conclusion that Plaintiff cannot satisfy all the elements of his claims. As such, the Court should grant summary judgment in favor of Defendants and against Plaintiff, dismissing all of his remaining claims with prejudice.

Respectfully submitted,

D. ANDREW WILSON
Ohio Attorney General

s/ *Mallory Buelow*
MALLORY BUELOW (0088686)*
**Lead Counsel*
ANDREW T. GATTI (0086854)
Senior Assistant Attorneys General
Criminal Justice Section
Corrections Litigation Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
P: 614-644-7233/F: 855-665-2568
Mallory.Buelow@OhioAGO.gov
Andrew.Gatti@OhioAGO.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing, *Defendants' Motion for Summary Judgment*, has been electronically filed September 9, 2026, and served upon Plaintiff, via regular U.S. mail, postage prepaid, at the below address.

Terrance J. Feaster, #A551-840
Toledo Correctional Institution
2001 E. Central Avenue
Toledo, OH 43608

/s/ *Mallory Buelow*
MALLORY BUELOW (0088686)
Senior Assistant Attorney General